**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**Columbus Division**

| | | |
|---|---|---|
| **TOM HARGROVE,** on behalf of himself and all others similarly situated, | * * * | |
| **Plaintiff,** | * * | **CIVIL ACTION NO.: _____** |
| **v.** | * * | |
| **WILDERNESS SPORTS WAREHOUSE, LLC, d/b/a TACKLE WAREHOUSE; RUNNING WAREHOUSE, LLC; SPORTS WAREHOUSE, INC., d/b/a TENNIS WAREHOUSE; AND SKATE WAREHOUSE, LLC.** | * * * * * | **JURY TRIAL DEMANDED** |
| **Defendants.** | | |

---

## CLASS ACTION COMPLAINT

---

Plaintiff Tom Hargrove ("Plaintiff") brings this class action on behalf of himself, and all others similarly situated, by and through undersigned counsel, and for his Complaint against Wilderness Sports Warehouse, LLC, d/b/a Tackle Warehouse; Running Warehouse, LLC; Sports Warehouse, Inc., d/b/a Tennis Warehouse; and Skate Warehouse, LLC ("Defendants") states and alleges as follows:

### <u>INTRODUCTION</u>

1.     Plaintiff brings this class action against Defendants for Defendant's failure to properly secure and safeguard highly-valuable, protected Personally Identifiable Information, including without limitations, names, addresses, credit card and debit card numbers, expiration dates, and CV codes, (collectively, "PII"), failure to comply with industry standards to protect information systems that contain PII, and failure to provide adequate and prompt notice to

Plaintiff and other Class Members that their PII had been accessed and compromised. Plaintiff seeks, among other things, damages, orders requiring Defendants to fully and accurately disclose the complete nature of the PII and other information that has been compromised and to adopt reasonably sufficient security practices and safeguards to protect Plaintiff's and the Class's PII and to prevent incidents like the disclosure in the future. Plaintiff further seeks an order requiring Defendants to provide identity theft protective services to Plaintiff and Class Members for their lifetimes, as Plaintiff and Class Members are, and will continue to be at an increased risk of identity theft due to the disclosure of their PII as a result of the conduct of Defendants described herein.

2.      Defendants operate online retailers in which consumers of specialty goods, i.e. fishing tackle, may purchase said goods at a rate cheaper than in local stores. Defendants operate throughout the United States.

3.      As an online retailer, purchases made through Defendants' websites are typically made via credit or debit card, and thus, Plaintiff and other users are required to provide their PII to Defendants.

4.      On December 16, 2021, Defendants announced that each respective company had been subject to a cybersecurity incident (the "Data Breach").

5.      Since the Data Breach, Defendants have provided updates that indicate its investigation has revealed that the compromised information included its users' PII.

6.      The Data Breach was a direct and proximate result of Defendants' failure to implement and follow basic security procedures. Plaintiff's and Class Members' PII is now in the hands of criminals and Plaintiff and Class Members now face a substantially increased risk of identity theft, both currently and for the indefinite future, at least in part because their PII will

now be offered and sold to identity thieves in an aggregated format, lending itself, for example, for ease of use in widespread phishing email schemes, identity theft, and other harms caused by the disclosure of their PII. Consequently, Plaintiff and Class Members have had to spend, and will continue to spend, significant time and money in the future to protect themselves due to Defendants' actions.

7.     Plaintiff, on behalf of himself and all others similarly situated, brings claims for negligence, negligence *per se*, breach of contract, violations of the Georgia Uniform Deceptive Trade Practices Act, declaratory judgment and alternative claims for implied breach of contract and unjust enrichment. Plaintiff seeks damages and injunctive relief, including requiring Defendants to adopt reasonably sufficient practices to safeguard PII that remains in Defendants' custody in order to prevent incidents like the Data Breach from reoccurring in the future.

## JURISDICTION AND VENUE

8.     Plaintiff is a citizen of the State of Georgia. Defendants are online retail companies authorized to do business in the State of Georgia, and, at all relevant times hereto, was engaged in the marketing and sale of various products in the State of Georgia.

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

10.     Venue is proper in this Court under 28 U.S.C. § 1391, as the conduct giving rise to Plaintiff's claims occurred in this District. Defendants transact business and reside in this District.

## PARTIES

11.     Plaintiff Tom Hargrove resides in Muscogee County and is a citizen of the State of Georgia. At all relevant times hereto, Plaintiff was a customer of Tackle Warehouse. Plaintiff's PII was disclosed without authorization to unknown third parties as a result of Defendants' Data Breach.

12.     Since the announcement of the Data Breach, Plaintiff has been required to spend his valuable time changing passwords and monitoring his various accounts in an effort to detect and prevent any misuses of his PII – time which he would not have had to expend but for the Data Breach.

13.     Furthermore, Plaintiff has experienced abnormal activity related to his credit card which was linked to his Tackle Warehouse Account. Plaintiff has spent additional time responding to the unauthorized activity on his credit card as a result of Defendants' Data Breach.

14.     As a result of the Data Breach, Plaintiff has been and will continue to be at heightened risk for fraud and identity theft, continue to spend related time, and sustain attendant damages for years to come. Such risk is certainly impending and is not speculative, given that information from the Data Breach is already being offered for sale on the dark web.

15.     Defendant Wilderness Sports Warehouse, LLC, d/b/a Tackle Warehouse ("Tackle Warehouse") is an online retailer that conducts business in Georgia and is authorized to conduct business in Georgia through the Georgia Secretary of State. Tackle Warehouse's corporate headquarters are located at 181 Suburban Road, San Luis Obispo, California, 93401. Tackle

Warehouse may be served via their registered agent, Bruce C. McCall, located at 1180 West Peachtree Street NW, Suite 2100, Atlanta, Georgia 30309.

16.    Defendant Running Warehouse, LLC ("Running Warehouse") is an online retailer that conducts business in Georgia and is authorized to conduct business in Georgia through the Georgia Secretary of State. Running Warehouse's corporate headquarters are located at 181 Suburban Road, San Luis Obispo, California, 93401. Running Warehouse may be served via their registered agent, Bruce C. McCall, located at 1180 West Peachtree Street NW, Suite 2100, Atlanta, Georgia 30309.

17.    Defendant Sports Warehouse, Inc., d/b/a Tennis Warehouse ("Tennis Warehouse") is an online retailer that conducts business in Georgia and is authorized to conduct business in Georgia through the Georgia Secretary of State. Tennis Warehouse's corporate headquarters are located at 181 Suburban Road, San Luis Obispo, California, 93401. Tennis Warehouse may be served via their registered agent, F. Donald Nelms, Jr., located at 1180 West Peachtree Street NW, Suite 2100, Atlanta, Georgia 30309.

18.    Defendant Skate Warehouse, LLC ("Skate Warehouse") is an online retailer that conducts business in Georgia and is authorized to conduct business in Georgia through the Georgia Secretary of State. Skate Warehouse's corporate headquarters are located at 181 Suburban Road, San Luis Obispo, California, 93401. Skate Warehouse may be served via their registered agent, Bruce C. McCall, located at 1180 West Peachtree Street NW, Suite 2100, Atlanta, Georgia 30309.

## FACTUAL ALLEGATIONS

***The Nature of Defendants' Business.***

19.     Defendants operate a conglomerate of specialty online retailers that sell items related to a particular outdoor activity, i.e., running, tennis, fishing, etc.[1]

20.     As online retailers, Defendants were aware that PII would be exchanged in order to purchase goods, namely credit and debit cards.[2]

21.     Defendants sell hundreds of millions of dollars' worth of goods each year to consumers nationwide, and as in Plaintiff's case, in Georgia.

22.     Importantly, Defendants only accept the following payment methods with Tackle Warehouse stating, "[y]ou may pay with a Master card, Visa card or Discover card. We also accept PayPal, Afterpay, International Money Orders, and Wired Fund Transfers."[3]

***The Data Breach***

23.     On December 27, 2021, Plaintiff and other customers received a notification that Defendants had suffered a data breach and personal information was affected during the incident.

24.     According to Tackle Warehouse, it learned about the Data Breach on October 15, 2021.

25.     Tackle Warehouse did not determine until November 6, 2021, that names, addresses, payment card information, expiration dates, and payment card security codes were obtained by the hacker on October 1, 2021.  It was not until December 27, 2021, that Tackle Warehouse notified Plaintiff and other putative Class Members that their PII the was taken in the Data Breach.

---

[1] Defendants are all related entities. *See* https://www.runningwarehouse.com.
[2] *See* https://www.tacklewarehouse.com/custserv/#how_pay.
[3] *Id.*

26.     Plaintiff was not notified of the Data Breach until nearly three (3) months after his information was taken on October 1, 2021, and after unauthorized activity had already occurred on his credit card.

***Defendants Obtain, Collect, and Store Plaintiff's and Class Members' PII***

27.     In the ordinary course of doing business with Defendants' customers, Plaintiff and Class Members are regularly required to provide their sensitive, personal, and private protected information in order to purchase goods from Defendants.

28.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

29.     Plaintiff and Class Members reasonably expect that retailers such as Defendants will use the utmost care to keep this information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

30.     Defendants acknowledge in their respective privacy policy their obligation to keep users' PII confidential and all have nearly identical privacy policies that state Defendants "respect[] your privacy and [are] committed to protecting it . . . ." [4]

31.     Despite Defendants' commitment to protecting personal information, Defendants failed to prioritize data and cyber security by failing to adopt reasonable data and cyber security measures that would prevent and detect the unauthorized access to Plaintiff's and Class Members' PII.

---

[4] https://www.tacklewarehouse.com/privacypolicy.html; https://www.skatewarehouse.com/privacypolicy.html; https://www.tennis-warehouse.com/privacypolicy.html; https://www.runningwarehouse.com/privacypolicy.html.

32.    Had Defendants remedied the deficiencies in its information storage and security

systems, followed industry guidelines, and adopted security measures recommended by experts

in the field, Defendants could have prevented intrusion into their information storage and

security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential PII.

***The Value of Private Information and Effects of Unauthorized Disclosure***

33.    Defendants were well aware that the protected PII they acquire is highly sensitive

and of significant value to those who would use it for wrongful purposes.

34.    PII is a valuable commodity to identity thieves, particularly when it is aggregated

in large numbers and when multiple types of information for a single user are combined. As the

FTC recognizes, identity thieves can use this information to commit an array of crimes including

identity theft, and medical or financial fraud.[5] Indeed, a robust "cyber black market" exists in

which criminals openly post stolen PII and other protected financial information on multiple

underground Internet websites, commonly referred to as the "dark web."

35.    PII is valued on the dark web at approximately $1 per line of information, with

this amount likely to increase.[6]

36.    The ramifications of Defendants' failure to keep Plaintiff and Class Members' PII

secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and

damage to victims may continue for years.

---

[5] https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft
[6] https://www.pacetechnical.com/much-identity-worth-black-
market/#:~:text=Personally%20identifiable%20information%20is%20sold,at%20a%20fast%20f
ood%20joint.

37.     Further, criminals often trade stolen PII on the "cyber black market" for years following a breach. Cybercriminals can also post stolen PII on the internet, thereby making such information publicly available.

38.     Defendants knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its data security systems were breached. Defendants failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

***FTC Guidelines***

39.     Defendants are prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

40.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[7]

41.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[8]

---

[7] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[8] https://www.ftc.gov/system/files/documents/plain-language/pdf-0136proteting-personal-information.pdf.

42.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[9]

43.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

44.    Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

45.    Defendants were at all times fully aware of its obligations to protect the PII of consumers because of its business model of collecting PII and storing payment information. Defendants were also aware of the significant repercussions that would result from its failure to do so.

***Plaintiff and Class Members Suffered Damages***

46.    The ramifications of Defendants' failure to keep user PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may

---

[9] *Id.*

continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud, occurring 65 percent of the time.[10]

47.     In 2019 alone, consumers lost more than $1.9 billion to identity theft and fraud.[11]

48.     Besides the monetary damage sustained, consumers may also spend anywhere from approximately 7 hours to upwards to over 1,000 hours trying to resolve identity theft issues.[12]

49.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

50.     Despite all of the publicly available knowledge of the continued compromises of PII, Defendants' approach to maintaining the privacy of PII was reckless, or in the very least, negligent.

51.     As a result of Defendants' failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable PII; the imminent and certainly impending injury flowing from fraud and identity theft posed by their PII being placed in the hands of criminals; damages to and diminution in value of their PII that was entrusted to Defendant with the understanding the

---

[10] https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics#:~:text=In%202019%2C%2014.4%20million%20consumers,about%201%20in%2015%20people&text=Identity%20theft%20is%20the%20most,data%20breaches%20increased%20by%2017%25

[11] *Id.*

[12] https://www.lifelock.com/learn-identity-theft-resources-how-long-does-it-take-to-recover-from-identity-theft.html#:~:text=And%20ID%20theft%20recovery%20is,more%20resolving%20identity%20theft%20problems.

Defendant would safeguard the PII against disclosure; and continued risk to Plaintiff's and the

Class Members' PII, which remains in the possession of Defendant and which is subject to

further breaches so long as Defendant fails to undertake appropriate and adequate measures to

protect the PII that was entrusted to it.

## CLASS ALLEGATIONS

52.    Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, on behalf of the class defined as:

> **All individuals in the United States whose PII was compromised in
> Defendants' Data Breach which occurred around October 2021.**

53.    Plaintiff further brings this case individually and pursuant to Rule 23 of the

Federal Rules of Civil Procedure, on behalf of a sub-class of Georgia residents defined as

follows:

> **All residents of the State of Georgia whose PII was compromised in Defendants'
> Data Breach which occurred around October 2021.**

54.    Excluded from the Class are Defendants, their subsidiaries and affiliates, their

officers, directors and members of their immediate families and any entity in which Defendants

have a controlling interest, the legal representative, heirs, successors, or assigns of any such

excluded party, the judicial officer(s) to whom this action is assigned, and the members of their

immediate families.

55.    Plaintiff reserves the right to modify or amend the definition of the proposed

Class, if necessary, before this Court determines whether certification is appropriate.

56.    The requirements of Rule 23(a)(1) are satisfied. The class described above is so

numerous that joinder of all individual members in one action would be impracticable. The

disposition of the individual claims of the respective Class Members through this class action

will benefit both the parties and this Court. The exact size of the class and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to, the files implicated in the Data Breach.

57.    The requirements of Rule 23(a)(2) are satisfied. There is a well-defined community of interest and there are common questions of fact and law affecting members of the Class. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

a.    Whether and to what extent Defendants had a duty to protect the PII of Plaintiff and Class Members;

b.    Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' PII;

c.    Whether Defendants violated their duties not to disclose the PII of Class Members to unauthorized third parties;

d.    Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e.    Whether Defendants failed to adequately safeguard the PII of Class Members;

f.    Whether Defendants breached its duties to exercise reasonable care in handling Plaintiff's and Class Members' PII by storing that information unencrypted on computers and hard drives in the manner alleged herein, including failing to comply with industry standards;

g.      Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.      Whether Defendants had respective duties not to use the PII of Class Members for non-business purposes;

i.      Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

j.      Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct; and

k.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

58.      The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of the members of the Class.  The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same failure by Defendants to safeguard PII.

59.      Plaintiff and members of the Class were customers of Defendants, each having their PII obtained by an unauthorized third party.

60.      The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class members are substantially identical as explained above. While the aggregate damages that may be awarded to the members of the

Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying the case as a Class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendants' uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

61.     Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

62.     Defendant owed a duty under common law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their PII in its possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendants' security systems to ensure that Plaintiff's and Class Members' PII in Defendants' possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

63.     Defendants' duty to use reasonable care arose from several sources, including but not limited to those described below.

64.     Defendants had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendants. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendants were obligated to act with reasonable care to protect against these foreseeable threats.

65.     Defendants admit that they have the responsibility to protect consumer data, that they are entrusted with this data, and that they did not live up to its responsibility to protect the PII at issue here.

66.     Defendants breached the duties owed to Plaintiff and Class Members and thus were negligent. Defendants breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiff and Class Members; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) disclose that Plaintiff's and Class Members' PII in Defendants' possession had been or was reasonably believed to have been, stolen or compromised.

67.     But for Defendants' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised.

68.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered injuries, including:

    a.   Theft of their PII;

    b.   Costs associated with requesting credit freezes;

    c.   Costs associated with the detection and prevention of identity theft;

    d.   Costs associated with purchasing credit monitoring and identity theft protection services;

    e.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

    f.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of Defendants' Data Breach;

    g.   The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    h.   Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendants with the mutual understanding that Defendants would safeguard Plaintiff's and Class Members data against theft and not allow access and misuse of their data by others; and

    i.   Continued risk of exposure to hackers and thieves of their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protected Plaintiff.

69.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### NEGLIGENCE PER SE—FEDERAL LAW
### (On Behalf of Plaintiff and the Class)

70.     Plaintiff restates and realleges all proceeding factual allegations above as if fully set forth herein.

71.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendants for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendants' duty.

72.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach.

73.     Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se*.

74.     Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

75.     Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

76.     Additionally, Defendants have a duty to act reasonably in handling consumer data and to use reasonable data security measures that arises under the Gramm–Leach–Bliley Act's implementing regulations, 16 C.F.R. § 314 (the "Safeguards Rule"), which "sets forth standards

for developing, implementing, and maintaining reasonable administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information" and "applies to the handling of customer information by all financial institutions[.]" 16 C.F.R. § 314.1(a)-(b).

77.    The Safeguards Rule "applies to all customer information in [a financial institution's] possession, regardless of whether such information pertains to individuals with whom [a financial institution has] a customer relationship, or pertains to the customers of other financial institutions that have provided such information to [the subject financial institution]." 16 C.F.R. § 314.1(b).

78.    The Safeguards Rule requires financial institutions and entities who act on behalf of financial institutions to "develop, implement, and maintain a comprehensive information security program that is written in one or more readily accessible parts and contains administrative, technical, and physical safeguards that are appropriate to [the financial institution's] size and complexity, the nature and scope of [the financial institution's] activities, and the sensitivity of any customer information at issue."  16 C.F.R. § 314.3(a).

79.    Specifically, the Safeguards Rule requires entities to:

(b) Identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that could result in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information, and assess the sufficiency of any safeguards in place to control these risks. At a minimum, such a risk assessment should include consideration of risks in each relevant area of your operations, including:
(1) Employee training and management;
(2) Information systems, including network and software design, as well as information processing, storage, transmission and disposal; and
(3) Detecting, preventing and responding to attacks, intrusions, or other systems failures.
(c) Design and implement information safeguards to control the risks you identify through risk assessment, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.

* * *

> (e) Evaluate and adjust your information security program in light of the results of the testing and monitoring required by paragraph (c) of this section; any material changes to your operations or business arrangements; or any other circumstances that you know or have reason to know may have a material impact on your information security program.

16 C.F.R. § 314.4.

80.     As alleged herein, Defendants breached their duties under the Safeguards Rule.

81.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

<u>**THIRD CAUSE OF ACTION**</u>
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

82.     Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

83.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

84.     An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff's and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendants' data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiff continues to

suffer injury as a result of the compromise of his PII and remains at imminent risk that further compromises of his PII will occur in the future.

85.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendants owe a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, and Section 5 of the FTC Act; and

    b.    Defendants continue to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

86.    This Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

87.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendants. The risk of another such breach is real, immediate, and substantial. If another breach of Defendants occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

88.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

89.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach of Defendants, thus eliminating the additional injuries that would result to Plaintiff and consumers whose confidential information would be further compromised.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Class)**

90.     Plaintiff restates and realleges all proceeding factual allegations above as if fully set forth herein.

91.     Defendants' Privacy Policy is an agreement between Defendants and individuals who provided their PII to Defendants, including Plaintiff and Class Members.

92.     When Plaintiff and Class Members provided their financial and personal information to Defendants to make purchases, it was done so pursuant to Defendants' privacy policies which guaranteed that Plaintiff's personal information would be safeguarded, and that Defendants would timely notify Plaintiff had his information been breached or compromised. *See* ¶ 30.

93.     Each purchase made by Plaintiff and the Class was carried out pursuant to this agreement.

94.     Plaintiff and the Class would not have provided their information had they known that Defendants would not properly safeguard their financial and personal information.

95.      Defendants, in collecting Plaintiff's and Class Members' PII, manifested their intent to adhere to their obligations under the "Privacy Policy", including, "WSW uses commercially reasonable ethical, physical, managerial, and technical safeguards to preserve the integrity and security of your personal information consistent with industry standards. For

example, we use encryption, passwords, and physical security measures to help protect your personal information against unauthorized access and disclosure."[13]

96.    Defendants' Privacy Policy also provides, "[i]n the event that personal information is compromised as a result of a breach of security, WSW will notify those persons whose personal information has been compromised as soon as practicable, in accordance with the notification procedures set forth in this Policy, or as otherwise required by applicable law."14

97.    Plaintiff and Class Members on the one hand, and Defendants on the other, formed contracts when Plaintiff and Class Members provided PII to Defendants subject to their "Privacy Policy."

98.    Plaintiff and Class Members fully performed their obligations under the contracts with Defendants.

99.    Defendants breached their agreements with Plaintiff and Class Members by failing to protect their PII. Specifically, Defendants (1) failed to use reasonable organizational, technical, procedural, and administrative measures to protect that information; and (2) disclosed that information to unauthorized third parties, in violation of their agreements and (3) failing to provide timely notice.

100.    Plaintiff and the Class fully performed all obligations under this agreement, and Defendants did not, as demonstrated by the Data Breach and Defendants' untimely notification of the breach to Plaintiff.

---

[13] https://www.tacklewarehouse.com/privacypolicy.html.
[14] *Id.*

101.   The losses and damages sustained by Plaintiff and the Class as described herein were the direct and proximate result of Defendants' breach of this contract between Defendants and Plaintiff.

## FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Georgia Subclass**

102.   Plaintiff repeats and allege all proceeding factual allegations above as if fully alleged herein and asserts this claim in the alternative to the breach of contract claim to the extent necessary.

103.   Plaintiff and Class Members also entered into an implied contract with Defendants when they provided PII to Defendants.

104.   As part of these transactions, Defendants agreed to safeguard and protect the PII of Plaintiff and Class Members and to timely and accurately notify them if their PII was breached or compromised.

105.   Plaintiff and Class Members entered into the implied contracts with the reasonable expectation that Defendants' data security practices and policies were reasonable and consistent with industry standards. Plaintiff and Class Members believed that Defendants under the implied contracts would fund adequate and reasonable data security practices.

106.   Plaintiff and Class Members would not have provided and entrusted their PII to Defendants or would have paid less in the absence of the implied contract or implied terms between them and Defendants. The safeguarding of the PII of Plaintiffs and Class Members and prompt and sufficient notification of a breach was critical to realize the intent of the parties. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendants.

107.    Defendants breached their implied contracts with Plaintiff and Class Members to protect their PII when they (1) failed to have security protocols and measures in place to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to provide timely and accurate notice that their PII was compromised as a result of the Data Breach.

108.    As a direct and proximate result of Defendants' breaches of implied contract, Plaintiff and Class Members sustained actual losses and damages as described in detail above, including that they did not get the benefit of the bargain for which they paid.

### SIXTH CAUSE OF ACTION
#### UNJUST ENRICHMENT
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Georgia Subclass**

109.    Plaintiff repeats and alleges Paragraphs 1-108, as if fully alleged herein, and assert this claim in the alternative to the breach of contract claim to the extent necessary.

110.    Plaintiff and Class Members have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by Defendants and that was ultimately stolen in the Data Breach.

111.    Defendants benefitted by the conferral upon them of the PII pertaining to Plaintiff and Class Members and by their ability to retain and use that information. Defendants understood that they were in fact so benefitted.

112.    Defendants also understood and appreciated that the PII pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Defendants maintaining the privacy and confidentiality of that PII.

113.    But for Defendants' willingness and commitment to maintain the privacy and confidentiality, that PII would not have been transferred to and entrusted with Defendants. Further, if Defendants had disclosed that their data security measures were inadequate,

Defendants would not have been permitted to continue in operation by regulators, members of the LLCs, and customers.

114.    As a result of Defendants' wrongful conduct as alleged in this Complaint (including, among things, their knowing failure to employ adequate data security measures, their continued maintenance and use of the PII belonging to Plaintiff and Class Members without having adequate data security measures, and their other conduct facilitating the theft of that PII), Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members. Defendants continue to benefit and profit from their retention and use of the PII while its value to Plaintiff and Class Members has been diminished.

115.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

116.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and is still receiving, without justification, from Plaintiff and Class Members in an unfair and unconscionable manner. Defendants' retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

117.    The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendants to retain the benefit.

118.    Defendants are therefore liable to Plaintiff and Class Members for restitution in the amount of the benefit conferred on Defendants as a result of their wrongful conduct,

including specifically the value to Defendants of the PII that was stolen in the Data Breach and the profits Defendants are receiving from the use of that information.

## CAUSES OF ACTION RELATING TO THE GEORGIA SUBCLASS

### SEVENTH CAUSE OF ACTION
### VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT, GA. CODE ANN. §§ 10-1-370, et seq.
### (On Behalf of Plaintiff and the Georgia Subclass)

119.    Plaintiff restates and realleges all proceeding factual allegations above as if fully set forth herein.

120.    The Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. §§10-1-370, et seq., prohibits deceptive trade practices in the course of a person's "business, vocation, or occupation." Ga. Code Ann. §10-1-372(a).

121.    Plaintiff, Defendants, and the Class are "persons" within the meaning of Ga. Code Ann. §10-1-371(5).

122.    Defendants engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code Ann. §10-1-372(a), including:

a.    Representing that goods or services have characteristics that they do not have;

b.    Representing that goods or services are of a particular standard, quality, or grade if they are of another; and

c.    Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

123.    Defendants' deceptive trade practices include:

a.    Unreasonably adopting and maintaining data security measures that were inadequate to protect Plaintiff's and the Class' PII, which was a direct and proximate cause of the Data Breach;

b.  Ignoring foreseeable security risks, refusing to remediate identified security risks, and failing to adequately improve security measures which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with the common law to avoid causing foreseeable risk of harm and statutory duties pertaining to the security of PII, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Georgia law, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that they would protect PII, including by implementing and maintaining reasonable security measures; and

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security of PII, including duties imposed by the FTC Act and Georgia law.

124.  Defendants' conduct caused substantial injury to Plaintiff and Class Members and provided no benefit to consumers or competition.  Further, the injuries suffered by Plaintiff and the Class Members are not outweighed by any countervailing benefits to consumers or competition.  And, because Defendants are solely responsible for securing their networks and protecting PII, there is no way Plaintiff, and the Class Members, could have known about Defendants' inadequate data security practices or avoided the injuries they sustained. There were reasonably available alternatives to further Defendants' legitimate business interests, other than their conduct responsible for the Data Breach.

125.  Defendants intended to mislead Plaintiff and the Class to induce them to rely on their misrepresentations and omissions.

126.    In the course of their business, Defendants engaged in activities with a tendency or capacity to deceive. Defendants knew their data security practices were inadequate.

127.    Had Defendants disclosed to Plaintiff and the Class that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendants held themselves out as able to protect Plaintiff's and the Class' PII and was trusted with sensitive and valuable PII of thousands of Class Members. Plaintiff and the Class Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered. Plaintiff and the Class Members were misled by Defendants' misrepresentations.

128.    Plaintiff and the Class Members are likely to be damaged in the future by Defendants' unfair trade practice.

129.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Class have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

130.    Plaintiff and the Class seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under Ga. Code Ann. §10-1-373.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENCE PER SE—GEORGIA LAW**
**(On Behalf of Plaintiff and the Georgia Subclass)**

131.    Plaintiff restates and realleges all proceeding factual allegations above as if fully set forth herein.

132.    O.C.G.A. § 10-1-912(a) states, "[a]ny information broker or data collector that maintains computerized data that includes personal information of individuals shall give notice

of any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of this state whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." O.C.G.A. § 10-1-912(a).

133.    Further, this code section provides "[t]he notice shall be made in the most expedient time possible and without unreasonable delay . . . ." *Id.*

134.    Here, Defendants had a duty to properly protect Plaintiff's personal information; however, although the Data Breach was discovered on October 15, 2021, and PII was taken on October 1, 2021, Plaintiff and other Class Members did not receive notice until December 27, 2021, giving cyber criminals an immense amount of time to use Plaintiff's personal information in an unauthorized manner without detection by Plaintiff, Class Members or Defendants.

135.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff on behalf of himself and all other similarly situated, prays for relief as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.    For damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Declaratory and injunctive relief as described herein;

f. Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

g. Awarding pre- and post-judgment interest on any amounts awarded; and,

h. Awarding such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff and the Class Members hereby request a trial by jury.

Dated this 11th day of January, 2022.

*/s/ Travis C. Hargrove*
Travis C. Hargrove
Georgia Bar No.: 141374
thargrove@thefinleyfirm.com
MaryBeth V. Gibson
Georgia Bar No.: 725843
mgibson@thefinleyfirm.com
N. Nickolas Jackson
Georgia Bar No.: 841433
njackson@thefinleyfirm.com
The Finley Firm, P.C.
200 13th Street
Columbus, Georgia 31901
Telephone: (706) 322-6226
Facsimile: (706) 322-6221

*Attorneys for Plaintiff*