O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| JOHN PATRICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUNNING WAREHOUSE, LLC et al.,<br><br>Defendants. | Case No. 2:21-cv-09978-ODW (JEMx);<br><br>Related Case Nos.<br>2:21-cv-09980-ODW (JEMx), [28]<br>5:22-cv-00012-ODW (JEMx), [39]<br>2:22-cv-00101-ODW (JEMx), [49]<br>2:22-cv-00297-ODW (JEMx), [35]<br>2:22-cv-00460-ODW (JEMx), [39]<br>2:22-cv-01716-ODW (JEMx), [41]<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION [48]** |

## I.     INTRODUCTION

Defendants Running Warehouse, LLC; Wilderness Sports, LLC d/b/a Tackle Warehouse; and Sports Warehouse, Inc. d/b/a Tennis Warehouse and Racquetball Warehouse move to compel Plaintiffs John Patrick, Bethany Buffington, Craig Arcilla, Laurie Gasnick, Jesse Pfeffer, Erik Solter, Lorne Bulling, and Tom Hargrove to arbitrate their claims against Defendants in seven related cases.[1]  (Mot. Compel. Arb.

---

[1] On March 4, 2022, the Court granted the stipulation of parties in seven related cases, approving a briefing schedule in which Defendants would file a single motion to compel arbitration directed to Plaintiffs in all seven cases, and Plaintiffs in the seven cases would file a single unified opposition brief.  (Stip. Br. Compel Arb., ECF No. 43; Order Granting Stip. Br., ECF No. 45.)  Thus, this Order addresses the Motion to Compel Arbitration pertaining to the seven cases listed in the caption.

("Motion" or "Mot."), ECF No. 48.) The matter is fully briefed. (Mem. P. & A. ISO Mot. ("Mem."), ECF No. 49; Opp'n, ECF No. 52; Reply, ECF No. 53.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion.[2]

## II. BACKGROUND

Defendants are companies that own and operate e-commerce websites for the purpose of selling sporting goods. (Mem. 10.) Plaintiffs purchased online goods from Defendants. (*Id.* at 11.)

### A. Website Checkout Process

During the checkout process, each Defendant's website provides an option for consumers to proceed straight to checkout or create an account. (*See* Decl. Brad Lum ("Lum Decl.") ¶¶ 4, 13, 26, ECF No. 50-13.)

#### 1. Account Creation

When a consumer chooses to create an account during checkout, they must check a box next to the words "Create an Account." (*Id.* ¶¶ 9, 17, 32.) On each website, the following statement appears directly next to the account creation checkbox: "[b]y creating an account, you agree to our privacy policy and terms of use." (*Id.*) In this statement, the phrase "terms of use" is a hyperlink that leads to the respective Defendant's terms of use ("Terms"). (*Id.*)

Gasnick, Pfeffer, and Hargrove created accounts on Running's, Tennis's, and Tackle's websites, respectively. (Decl. Drew Munster ¶¶ 4–6, ECF No. 50-9.) Each of those website's account creation option is depicted below.

**Running Warehouse**

**Billing Information**
☐ Create an Account
By creating an account, you agree to our privacy policy and terms of use.

(Lum Decl. Ex. A ("Running Website") 5 of 10, ECF No. 50-14.)

---

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

**Tennis Warehouse**



(Lum Decl. Ex. H ("Tennis Account Creation"), ECF No. 50-21.)

**Tackle Warehouse**



(Lum Decl. Ex. O ("Tackle Account Creation") 2 of 4, ECF No. 50-28.)

  *2. Submitting Order*

  Regardless of whether a consumer chooses to create an account, they must confirm their order by clicking a final button to "Place Order" or "Submit Order." (Lum Decl. ¶¶ 7, 16, 23, 29.) Immediately adjacent to this final button on each website is the following statement, "[b]y submitting your order you . . . agree to our privacy policy and terms of use." (*Id.*) In this statement, "terms of use" is a hyperlink that leads to the respective Defendant's Terms. (*Id.*)

  Arcilla, Buffington, Gasnick, and Patrick purchased goods from the Running website, (Mem. 12; Opp'n 9), Bulling and Pfeffer purchased goods from the Tennis website, (Mem. 14; Opp'n 6), Solter purchased goods from the Racquetball website, (Mem. 15; Opp'n 8), and Hargrove purchased goods from the Tackle website, (Mem. 16; Opp'n 4). The relevant portion of each website's checkout page is depicted below.

**Running Warehouse**

(Running Website 10 of 10.)

**Tennis Warehouse**

(Lum Decl. Ex. G ("Tennis Website") 11 of 11, ECF No. 50-20.)

**Racquetball Warehouse**

(Lum Decl. Ex. I ("Racquetball Website") 16 of 16, ECF No. 50-22.)

**Tackle Warehouse**

(Lum Decl. Ex. K ("Tackle Website") 13 of 13, ECF No. 50-24.)

B.   **Relevant Terms**

Each website's "terms of use" hyperlink leads to substantively identical Terms. (*See* Lum Decl. Exs. R–U (collectively, "Terms"), ECF Nos. 50-31 to 50-34.) Each contains the same "Choice of Law, Arbitration, and Venue" provision, which provides, in relevant part:

> You agree to arbitrate any and all claims, including all statutory claims, and any state or federal claims. By agreeing to arbitration, you understand and agree that you are giving up any rights to litigate claims in a court or before a jury, or to participate in a class action or representative action with respect to a claim.

(*Id.* (all caps removed).) The arbitration provision continues:

> Any claim, dispute or controversy (whether in contract, tort or otherwise, whether pre-existing, present or future, and including statutory, consumer protection, common law, intentional tort, injunctive and equitable claims) between you and us arising from or relating in any way to your use or purchase of products or services through the website or services will be resolved exclusively and finally by binding arbitration.
>
> All Claims shall be decided by one arbitrator pursuant to this provision and the commercial arbitration rules and procedures of JAMS, Inc. at their offices located in Orange County, California.

(*Id.* (all caps removed).)

C.   **Procedural History**

In or around October 2021, hackers breached Defendants' websites and stole Defendants' consumers' personally identifiable information ("PII") ("Data Breach"). (*See* Compl. ¶ 10, ECF No. 1.)[3] Plaintiffs assert that, as part of the Data Breach, the hackers stole Plaintiffs' PII that they had provided to Defendants when purchasing goods from Defendants online. (*See id.* ¶ 11.) Based on the Data Breach, Plaintiffs brought these seven putative class actions against Defendants asserting claims of negligence, breach of contract and of implied contract, and quasi contract. (*See id.*

---

[3] The Court has considered all seven complaints and all eight Plaintiffs' claims. For ease of reference, the Court cites to only Patrick's complaint.

1  ¶¶ 80–113.)  Defendants now move to compel Plaintiffs to arbitrate their claims[4]
2  against Defendants, based on the arbitration provision in the Terms.[5]

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  The Supreme Court has repeatedly interpreted the FAA as reflecting "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  However, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (quoting *Buckner v. Tamarin*, 98 Cal. App. 4th 140, 142 (2002)).

In deciding whether to compel arbitration, a court's inquiry is generally limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

---

[4] In the Notice of Motion, Defendants list all Plaintiffs' causes of action except Hargrove's fourth cause of action.  (*See* Mot. 1.)  However, in the motion papers, the parties do not differentiate Hargrove's fourth cause of action from all other claims.  (*See, e.g.*, Mem. 32 (arguing that "all of Plaintiffs' claims are subject to arbitration").)  As such, the Court understands the omission of Hargrove's fourth cause of action from the Notice as an oversight and considers Defendants' Motion as seeking to compel all Plaintiffs' claims to arbitration, as argued in the Memorandum and Reply.

[5] Defendants' evidentiary objection (ECF No. 54) is overruled as moot, as the Court need not and does not consider the objected-to evidence to resolve the Motion.

## IV. DISCUSSION

In seeking to compel Plaintiffs to arbitration, Defendants argue that the arbitration provision in the Terms delegates the threshold question of arbitrability to the arbitrator. (Mem. 28.) Conversely, Plaintiffs argue that the arbitration provision does not delegate arbitrability, and even if it did, they argue that the arbitration provision and the Terms are invalid under various theories. (Opp'n 1–2.)

### A. Delegation

The "gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably*'" agree to do so. *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Courts have found that parties clearly delegated arbitrability where they incorporated an arbitrator's arbitration rules in the agreement. For instance, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

Defendants argue that the arbitration provision here clearly and unmistakably delegates the question of arbitrability to the arbitrator by incorporating JAMS arbitration rules. (Mem. 28–29.) The arbitration provision provides: "All Claims shall be decided by one arbitrator pursuant to this provision and the commercial arbitration rules and procedures of JAMS, Inc. . . . ." (*See* Terms.) Further, Rule 11(b) of the JAMS Arbitration Rules expressly delegates arbitrability to the arbitrator: "[A]rbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by [JAMS]." *JAMS Comprehensive Arbitration Rules and Procedures* (June 1, 2021), https://www.jamsadr.com/rules-comprehensive-arbitration. By agreeing to an arbitration provision that incorporates JAMS Rules, and particularly in light of the language of JAMS Rule 11(b), the Court

finds that the parties clearly and unmistakably delegated the question of arbitrability to JAMS. *See Oracle Am.*, 724 F.3d at 1074.

Plaintiffs argue that Defendants should have included more explicit language addressing enforceability and arbitrability in the Terms, (Opp'n 17–18), but that is unnecessary as a matter of law. Courts in and out of the Ninth Circuit have found that incorporation of JAMS arbitration rules alone is "clear and unmistakable evidence of an agreement to arbitrate arbitrability." *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283–84 (10th Cir. 2017); *O'Connor v. Warner Bros. Animation Inc.*, No. 2:20-cv-09291-MCS (JPRx), 2021 WL 3598581, at *2 (C.D. Cal. Jan. 21, 2021) (collecting cases) ("The agreements' incorporation of the JAMS arbitration rules also constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."). Thus, because the parties have agreed to arbitrate according to JAMS rules and procedures, the parties also agreed to delegate the question of arbitrability to the JAMS arbitrator.

Alternatively, Plaintiffs urge the Court not to delegate arbitrability to the arbitrator because Plaintiffs are "unsophisticated parties." (Opp'n 21–24.) Plaintiffs rely chiefly on *Brennan*, in which the court held that sophisticated parties could delegate arbitrability in a commercial contract by incorporating an arbitrator's rules. (*Id.* at 21 (citing *Brennan*, 796 F.3d at 1130).) However, the court in *Brennan* rejected Plaintiffs' suggested rule—to limit the ability to delegate arbitrability through incorporation to only "sophisticated parties"—and expressly cautioned that the court's "holding [did] *not* foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Brennan*, 796 F.3d at 1130 (emphasis added).

Indeed, the *Brennan* court noted that "the vast majority of the circuits" to hold that incorporation of an arbitrator's rules clearly and unmistakably delegated arbitrability did not limit that holding to "sophisticated parties." *Id.* at 1130–31 (emphasis added). Moreover, a "majority of courts have concluded that *Brennan* applies equally to sophisticated and unsophisticated parties." *Maybaum v. Target*

*Corp.*, No. 2:22-cv-00687-MCS (JEMx), 2022 WL 1321246, at *5 (C.D. Cal May 3, 2022); *see, e.g., Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) ("[T]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties."). The Court agrees with the majority view and finds that incorporation of JAMS arbitration rules constitutes clear and unmistakable evidence that the parties intended to delegate arbitrability, regardless of whether the parties are "sophisticated."

Because Defendants established that all parties agreed to delegate arbitrability in the arbitration provision, the Court now turns to Plaintiffs' arguments concerning the arbitration provision's validity.

**B.     Validity of the Arbitration Provision**

Plaintiffs argue the arbitration provision, including the delegation clause therein, is invalid for several reasons: (1) the arbitration provision prohibits public injunctive relief, contrary to California law; (2) Defendants failed to provide Plaintiffs with adequate notice of the arbitration provision; and (3) the arbitration provision is unconscionable. (Opp'n 24–42.) The Court addresses each argument in turn.

*1.     Public Injunctive Relief*

Plaintiffs first argue that the arbitration provision in the Terms is invalid because it contains a non-severable clause prohibiting public injunctive relief. (*Id.* at 24–28.)

Under California law, a clause prohibiting an arbitrator from issuing a public injunction is invalid and unenforceable. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951–52 (2017). To determine whether an arbitration provision contains such a prohibition, courts consider whether "the arbitrator can grant only individual relief." *Dornaus v. Best Buy Co., Inc.*, No. 18-cv-04085-PJH, 2019 WL 632957 at *6 (C.D. Cal. Feb. 14, 2019). Here, the relevant clause reads: "All Claims shall be brought solely in the parties' individual capacity, and not as a plaintiff or class member in any purported

class or representative proceeding." (Terms.) This language prohibits the consumer from arbitrating as part of a class or representative proceeding, but says nothing about the consumer's ability to pursue, or the arbitrator's ability to award, any certain type of relief.

The cases on which Plaintiffs rely are inapposite. In each, the arbitration clause contained an explicit term providing that the arbitrator could grant only individual relief. In *Jialu Wu v. iTalk Global Communications, Inc.*, No. 20-cv-7150-PSG (PJWx), 2020 WL 8461696, at *5 (C.D. Cal. Oct. 21, 2020), the court invalidated a provision providing that "[n]o arbitrator may award relief outside the limits set herein." In *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2020 WL 12862941, at *2 (N.D. Cal. Mar. 2, 2020), the court invalidated a provision indicating that "[t]he arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief." And finally, in *Dornaus*, the court invalidated a provision providing that "[t]he arbitrator . . . may award relief only on an individual basis." 2019 WL 632957, at *4. In each of these cases, the unenforceable provision concerned the arbitrator's authority to award certain types of relief. Here, the provision at issue concerns Plaintiffs' capacity to bring certain types of claims. The Terms contain no provision resembling the ones in the cases that Plaintiffs cite.

The arbitration agreement is not invalid under *McGill*.

*2. Notice*

Plaintiffs next argue that the arbitration agreement is invalid because they did not receive sufficient notice of the Terms, and thus were unable to meaningfully assent to the arbitration provision therein. (*See* Opp'n 30–33.)

A defendant can establish sufficient notice by proving either "that [plaintiffs] ha[d] actual knowledge of the agreement" or that the defendant provided enough information to put plaintiffs on inquiry notice. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Here, every Plaintiff but Arcilla acknowledges seeing a hyperlink to the Terms.[6] However, all Plaintiffs argue that the existence of this hyperlink did not apprise them of the existence of an arbitration agreement. (Opp'n 1.) This argument is unavailing. With the exception of Arcilla, Plaintiffs' awareness of the hyperlinked text establishes that they had inquiry notice of the Terms. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("While it may be the case that many users will not bother reading the [Terms], that is the choice the user makes; the user is still on inquiry notice.").

As for Arcilla, he does not acknowledge seeing a hyperlink to Running's website's Terms. (*See* Decl. Craig Arcilla ("Arcilla Decl."), ECF No. 52-5.) Thus, the question is whether Running's website provided sufficient information to put Arcilla on inquiry notice. *See Berman*, 30 F.4th at 856. A website provides sufficient inquiry notice "only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.*

a. Reasonably Conspicuous Notice

Running uses "browsewrap agreements, in which a website offers terms that are disclosed only through a hyperlink." *Id.* (internal quotation marks omitted). To be conspicuous, a browsewrap agreement "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.*

On Running's desktop website, the link to the Terms appears in contrasting green font that, although small, is still clearly "legible to the naked eye." *See id.* at 856–57; (Running Website 5, 10). The link is located immediately beneath the "Place Order" button, making it unavoidable to a consumer placing an online order. (*See* Running Website 10.) Considering the font, format, and placement of the Terms

---

[6] (Aff. Tom Hargrove ¶ 14, ECF No. 52-1; Decl. Lorne Bulling ¶¶ 3, 6, ECF No. 52-2; Decl. Jesse Pfeffer ¶ 8, ECF No. 52-3; Decl. Erik Solter ¶ 6, ECF No. 52-4; Decl. Bethany Buffington ¶ 6, ECF No. 52-6; Aff. Laurie Gasnick ¶ 14, ECF No. 52-7; Decl. John Patrick ¶ 8, ECF No. 52-8.)

hyperlink, and that all of Arcilla's co-plaintiffs who used Running's checkout saw the link, (*see* Decl. Bethany Buffington ¶ 6; Aff. Laurie Gasnick ¶ 14; Decl. John Patrick ¶ 8), the Court finds that Running's checkout page provided Arcilla with "reasonably conspicuous notice" of the Terms, *see Berman*, 30 F.4th at 856.

### b. Unambiguous Manifestation of Assent

"A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* at 857.

Running's website contains language that does exactly that. To place an order on Running's website, a consumer must click on a "Place Order" button directly above the following language of assent: "By submitting your order you . . . agree to our privacy policy and terms of use." (Running Website 10.) Running's checkout page thus requires the consumer to press a button immediately above a statement "explicitly notify[ing] [the] user of the legal significance of the action she must take to enter into a contractual agreement." *Berman*, 30 F.4th at 858. Accordingly, Running's website is designed in a way that required Arcilla to unambiguously manifest assent to the Terms when he clicked "Place Order" to complete his purchase. (*See* Opp'n 9 (confirming Arcilla made purchases from Running's website); Arcilla Decl. ¶¶ 8–9 (confirming the hyperlink to Running's Terms appeared directly below the "Place Order" button during Arcilla's purchase).)

As such, Plaintiffs, including Arcilla, had inquiry notice of the Terms, including the arbitration provision therein, as a matter of law. *See Meyer*, 868 F.3d at 79.

### 3. Unconscionability

Finally, Plaintiffs argue that the arbitration provision is unconscionable, and thus unenforceable. (Opp'n 33–43.)

"Under California law, unconscionable contracts are those that are 'so one-sided as to shock the conscience.'" *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1013 (S.D. Cal. 2017) (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244

(2016)). For a court to refuse to enforce a contract, both substantive and procedural unconscionability must be present, although not to the same degree. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Courts measure the substantive and procedural unconscionability on a "sliding scale": "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

Plaintiffs raise only one substantive unconscionability argument: because the Terms provide Defendants with the unilateral right to amend or modify the Terms without notice, the Terms, and thus the arbitration agreement, are substantively unconscionable. (Opp'n 40–41.) However, no Defendant has exercised the modification clause, and the mere presence of a "unilateral modification clause does not make the arbitration provision itself unconscionable." *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). Therefore, Plaintiffs fail to establish that the Terms are substantively unconscionable and Plaintiffs' unconscionability argument necessarily fails. *See Armendariz*, 24 Cal. 4th at 114 (requiring both substantive and procedural unconscionability to find a term unenforceable).

**C. Dismissal or Stay**

Defendants request that, in the event the Court grants the Motion, the Court also dismiss Plaintiffs' claims without prejudice or, in the alternative, stay the seven related cases pending arbitration. (Mot. 1–2.)

In the Ninth Circuit, district courts have discretion to dismiss a party's complaint where the court finds that the arbitration clause covers all of the party's claims. *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (affirming dismissal of action without prejudice where "all of the claims raised in the action are subject to arbitration"); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (finding 9 U.S.C. § 3 "did not limit the court's authority to grant a dismissal" rather than stay the case).

Although Plaintiffs argue for a stay instead of a dismissal, their argument assumes that some claims would not be subject to arbitration. (*See* Opp'n 43–45.) However, the parties have delegated the question of arbitrability to the arbitrator, and neither side has presented any compelling reason to stay the case. *See Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015) (dismissing where neither party provided a compelling reason to keep the case on the docket). Therefore, the Court exercises its discretion and dismisses these seven related actions without prejudice.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Compel Arbitration and **DISMISSES** Plaintiffs' individual and putative class claims in these seven related actions **without prejudice**:

*Patrick v. Running Warehouse*, No. 2:21-cv-09978-ODW (JEMx), **ECF No. 48**; *Buffington v. Running Warehouse*, No. 2:21-cv-09980-ODW (JEMx), **ECF No. 28**; *Arcilla v. Wilderness Sports Warehouse*, No. 5:22-cv-00012-ODW (JEMx), **ECF No. 39**; *Gasnick v. Running Warehouse*, No. 2:22-cv-00101-ODW (JEMx), **ECF No. 49**; *Pfeffer v. Wilderness Sports Warehouse*, No. 2:22-cv-00297-ODW (JEMx), **ECF No. 35**; *Solter v. Sports Warehouse*, No. 2:22-cv-00460-ODW (JEMx), **ECF No. 39**; and *Hargrove v. Wilderness Sports Warehouse*, No. 2:22-cv-01716-ODW (JEMx), **ECF No. 41**.

**IT IS SO ORDERED.**

October 18, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**